[Crim. No. 6667.  Second Dist., Div. Two.  Aug. 7, 1959.]

THE PEOPLE, Respondent, v. GEORGE MUNIZ, Appellant.

Manuel Valenzuela and Julius Weled for Appellant.

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

FOX, P. J.—Defendant was convicted of violating section 11500, Health and Safety Code (possession of heroin). Defendant's application for probation was denied and he was sentenced to the state prison.

On August 28, 1958, Officers Barber and Stephensen, of the Los Angeles Police Department Narcotic Division, received a telephone call from an informant that the defendant was going to make a delivery of heroin on the second floor of a hotel at 221 West 3d Street, Los Angeles. A description of the defendant was also furnished. As a result of this information, the officers went to this hotel at approximately noon and stationed themselves in a hallway restroom. They waited about 30 minutes and then saw the defendant in the hallway. As he approached the door to the restroom, the officers stepped out, and Barber said, "Stand still, we're police officers." Defendant backed away rapidly and Stephensen took hold

of defendant's wrists, as his hands were in his pockets. Defendant was wearing a short sleeved shirt. Barber testified that as the defendant was backing away, he noticed discoloration and marks lying over the vein areas on the defendant's arms. Barber stated that as a result of experience and training in the narcotic field, he was of the opinion that the marks he observed on the defendant's arms "were caused by injections of a substance into the main veins of the arms similar to what" he had seen "many times caused by narcotic heroin injection into the main veins." At this point, Officer Stephensen said, "You're under arrest." In defendant's left hand he had a piece of pink tissue paper containing 51 capsules of heroin. Officer Barber declined to reveal the name of the informant, at which time defense counsel moved to strike all of Barber's testimony relating to the probable cause for making the arrest. The motion was overruled. Defense counsel asked Barber the following question: "So then it is true, then, Officer, that the only reason you made the arrest of the defendant is you saw some marks on his arms as he was backing away from you, and then that caused you to suspect that he was on narcotics or had something to do with narcotics?" Barber answered, "Yes."

Defendant objected to the introduction into evidence of the heroin obtained from him at the time of his arrest on the ground that it was illegally obtained in that the officers had no search warrant and that the officers had no reasonable grounds upon which to believe a felony was being committed or that they saw a misdemeanor being committed. This objection was overruled. The defendant was found guilty.

As grounds for reversal, defendant argues "that the court erred by admitting into evidence narcotic drugs which were the subject matter of an illegal search and seizure, the fruits of an unlawful arrest made without probable cause."

Penal Code, section 836, provides in part:

"A peace officer . . . may without a warrant, arrest a person;

"1. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence."

■■■ Health and Safety Code, section 11721, makes it a misdemeanor for any person to use narcotics. From the appearance of the defendant's arms, the officers could reasonably conclude that he was then using narcotics in violation of section 11721, a misdemeanor; such would justify an arrest without a warrant.

▮ In *People* v. *Coleman*, 134 Cal.App.2d 594, 599 [286 P.2d 582], it is stated that "a search without a warrant is valid where it is incident to a lawful arrest, if it is reasonable and made in good faith; and a seizure, during such a search, of evidence related to the crime is permissible." (*In re Dixon*, 41 Cal.2d 756, 761-762 [264 P.2d 513]; *Harris* v. *United States*, 331 U.S. 145, 151 [67 S.Ct. 1098, 91 L.Ed. 1399]; *United States* v. *Rabinowitz*, 339 U.S. 56, 61 [70 S.Ct. 430, 94 L.Ed. 653].)

▮ The defendant's arrest was lawful and the search was made as an incident thereto. Nothing in the record suggests that the search was not made in good faith or that it was unreasonable either in scope or manner of execution. It follows, therefore, that the heroin was properly received in evidence.

Defendant questions the credibility of Barber's testimony. In particular, he contends that the officer could not, due to the lighting in the hallway and his distance from the defendant, reasonably believe defendant was a user prior to his arrest. The record, however, reveals no inherent improbability in Barber's testimony. ▮ As stated in *People* v. *Cahan*, 141 Cal.App.2d 891, 897 [297 P.2d 715]: "It is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which a determination depends. ▮ A reviewing court cannot reject the testimony of a witness that has been believed by the trier of fact unless there exists either a physical impossibility that it is true or its falsity is apparent without resorting to inferences or deductions." (See also *People* v. *Roberts*, 47 Cal.2d 374, 378 [303 P.2d 721].)

▮ Lastly, it should be noted that it is not necessary to reveal the identity of an informer who merely points the finger of suspicion at a defendant and an arrest thereafter follows which is based solely upon observations made by law enforcement officers which reasonably led them to believe a public offense was being committed in their presence. (*Scher* v. *United States*, 305 U.S. 251, 254 [59 S.Ct. 174, 83 L.Ed. 151]; *People* v. *Williams*, 51 Cal.2d 355, 359 [333 P.2d 19]; *People* v. *Amado*, 167 Cal.App.2d 345, 348 [334 P.2d 254]; *People* v. *Smith*, 166 Cal.App.2d 302, 306-307 [333 P.2d 208].)

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.